IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

SURJIT SINGH; SANTOKH
SINGH; and SATVINDER KAUR                                               PLAINTIFFS

v.                                                          No. 4:22-cv-195-MPM-JMV

CITY OF GREENVILLE,
MISSISSIPPI; MARTAVIS
MOORE; and CARL NICHOLS                                                 DEFENDANTS

<u>ORDER</u>

This matter comes before the Court on Defendants City of Greenville, Martavis Moore, and Carl Nichols' Motion for Summary Judgment [101]. The Court, having reviewed the record and having carefully considered the applicable law, is now prepared to rule.

BACKGROUND

Plaintiffs Santokh Singh ("Sunny"), Satvinder Kaur ("Sue"), and Surjit Singh are an East Indian family living in Greenville, Mississippi. Sunny owns two convenience stores in Greenville. Sue, his wife, and Surjit, his son, work at these stores. Defendant Carl Nichols is the chief fire marshal for the city, and Defendant Martavis Moore is a police officer for the city. Both Mr. Nichols and Mr. Moore are black.

Plaintiffs are suing Defendants under 42 U.S.C. § 1983 alleging racial discrimination and First Amendment retaliation. Plaintiffs allege three sets of facts support their claims: (1) the Greenville Police Department's response to a pair of thefts at the family's convenience stores,

1

(2) the fire marshal's request for one of the store's business permits, and (3) the City of Greenville's spraying the family's garden with herbicide.[1]

*1. Store Thefts*

On November 6, 2020, while Sue was working behind the counter at one of the family's convenience stores, a man snatched the cash register and ran out. Although Sue recognized the individual and relayed this information to the police, the police department failed to make an arrest before the suspect fled to Texas. Over the next several months, the family reached out to the police department frequently regarding the investigation. These interactions were marked by increasing frustration by the family and apparent indifference from the police department. The family's attempts to deliver surveillance footage to the investigator, obtain a copy of the police report, correct inaccuracies in the police report, and check on the status of the case were met with constant delays, avoidance, and incompetence by the police department. At one point, the lead investigator on the case was fired and arrested for domestic abuse. He had surveillance footage in his possession that was never recovered.

Nine months later on August 4, 2021, the family's other convenience store was burglarized. Around 5:30 AM, someone disconnected the power to the store, disabling the surveillance cameras, and broke in. A witness on scene told Sunny that he had called the police earlier that morning and told them a man was beating on the electrical wires with a sledgehammer. The family later learned that at around 5:50 AM, Officer Moore (Defendant) responded to a suspicious person call in the area. He found a man urinating next to an ice box near the store who was carrying a sledgehammer. According to Officer Moore, "I made contact with Mr. [Quintin] Moore and

---

[1] The recounting of these events comes from Exhibits A through G in Plaintiff's Response in Opposition, [106].

advised him that he needed to leave the property because if anything got broken into, he was going to be responsible. Mr. Moore asked me for a dollar for a soda and I gave it to him. Mr. Moore left the property walking north."

There were conflicting accounts from the police department and the witness regarding the burglary. Wanting to know exactly what happened, Surjit reached out to the police department requesting the dispatch audio and body cam footage. The police department refused to release the information without a subpoena. According to Surjit, "At that point I was at the height of my frustration, so I reacted emotionally. I made a call where I unloaded my frustrations…" This call was sometime before August 25, 2021, and was made to either the mayor's office or the police department.

*2. Permit Inspection*

On August 25, 2021, Defendant Carl Nichols, who is the Greenville Fire Marshall, walked into one of the family's convenience stores and asked Surjit for the business's privilege license. Surjit alleges Mr. Nichols' tone was loud and combative and that the conversation became heated. Mr. Nichols noticed some cats roaming around the store and expressed vocal discontent at the cats being allowed in the store since it sells meat. He also noticed cinderblocks and plywood intended for a renovation and said to Ms. Sue, "I could shut you down right now." Ms. Sue responded, "We live in a city where plots are growing like jungles around where you all are, but you want to send letters that I need to cut the spring weeds on my properties." Later in the conversation, after Surjit had gotten his dad Sunny on the phone to talk to Mr. Nichols, and Sunny was explaining why the business did not have a privilege license, Mr. Nichols said, "I got to see a privilege license. You people just think you're gonna come here are [*sic*] run business without privilege license? Don't you know you need a privilege license to run a business?"

3

Two days later, Mr. Nichols arrived at the store with a coworker to perform a fire inspection. Mr. Nichols stayed outside the store while his coworker went inside to perform the inspection. Midway through the inspection, a friend of the family who had been picking up sticks at an adjacent lot came inside crying and said, "I can't believe that b******d had the nerve to say that to us… He come outside, and he asked us 'do you have your privilege license?' Well I said, 'For What?' He said, 'Do you know this is the city limit you're working in? You need a privilege license for that.'" At the conclusion of the fire inspection, the inspectors found four problems: (1) no exit sign, (2) wires without conduits hanging from the ceiling, (3) fluorescent lights that needed replacing, and (4) trip hazards. Surjit disputes that any of these were actual issues because (1) there is only one door at the location, (2) the wires were eight feet in the air and out of reach, (3) they already had LED lights, and (4) there were no trip hazards. The inspectors gave the family three weeks to fix these problems and allowed the store to remain open during that time.

On September 20, 2021, the inspectors showed up for the follow-up inspection. The family had made several of the suggested improvements, including adding conduits to the wires and converting the fluorescent lights to LED. Mr. Nichols once again took issue with the cats. According to Surjit's written description, "[Mr. Nichols] interrupts and says, 'You know what I got a problem with?' His tone shifts to that of a petulant child, and he whispers, 'the cats.' He says, 'I mean you say the health department ok with it but I got to get 'em out here… they're roaming around here like they're royalty.'" Despite this, the fire inspectors agreed to grant the store a privilege license on the condition that they would "periodically stop by just to check and see what's going on."

*3. Garden Spraying*

4

On August 26, 2021, a portion of the family's garden was sprayed with herbicide by the City's public works department. This incident was partially captured on low-definition video. In the video, a city truck can be seen rolling into view with a man sitting on the tailgate. The man appears to be spraying herbicide from a nozzle. As the truck approaches the chain link fence immediately adjacent the road, he appears to spray some vines growing on the fence. These were gourds. The family contacted the Mississippi Department of Agriculture and Commerce and filed a complaint. After investigating, the Department found that some of the family's plants had been sprayed with herbicides and issued the City a warning.

Frustrated, the family sued the City of Greenville, Officer Martavis Moore, and Fire Marshall Carl Nichols alleging racial discrimination and First Amendment retaliation. In their Motion for Summary Judgment, Defendants contend that Officer Moore and Fire Marshall Nichols are protected by qualified immunity and that the City of Greenville has not been shown to have an official policy or custom that caused the alleged harm. Additionally, Defendants argue that the family has not produced sufficient evidence to support a discrimination or retaliation claim.

ANALYSIS

*I. Officer Moore and Fire Marshall Nichols*

Defendants argue that Officer Moore and Mr. Nichols are entitled to dismissal based on qualified immunity. "Qualified immunity shields state officials from personal suits when they act in their official capacity 'insofar as [their] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Stidham v. Texas Com'n on Private Sec.*, 418 F.3d 486, 490 (5th Cir. 2005) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "'represents the norm, and courts should deny a defendant immunity

5

only in rare circumstances.'" *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019) (citation omitted). Once an officer invokes qualified immunity, "the plaintiff must rebut it by establishing (1) that the officer violated a federal statutory or constitutional right and (2) that the unlawfulness of the conduct was 'clearly established at the time.'" *Id*. (citing *District of Columbia v. Wesby*, 583 U.S. 48, 62 (2018)). "To identify whether the law was clearly established when the officers acted, 'we must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity.'" *Id*. (citing *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011)). "It is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality." *Id*. (citing *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (per curiam) (internal quotation marks and citation omitted)).

The family has not satisfied their burden of pointing to a case that shows that the defendants' conduct violated clearly established law. Instead, they argue that Defendants waived the defense of qualified immunity by failing to raise it in their answer. Defendants, however, raised the defense in the third sentence of their answer. As such, qualified immunity is not waived and the claims against Martavis Moore and Carl Nichols are dismissed.

*II. The City of Greenville*

Defendants next argue that the claims against the City of Greenville also fail. Municipalities are not responsible for the actions or inactions of their employees under a respondeat superior theory. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). Instead, there must be "something more" to impose liability on a municipality, i.e., a demonstration that the constitutional violation occurred because of a municipal policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). To establish municipal liability under § 1983, Plaintiffs must show that "(1) an official policy (2) promulgated by the municipal policymaker (3)

6

was the moving force behind the violation of a constitutional right." *Verastique v. City of Dallas*, 106 F.4th 427, 432 (5th Cir. 2024) (cleaned up). For purposes of the first element, an "official policy" can include a practice that is "so persistent and widespread as to practically have the force of law." *Id*. (quoting *Johnson v. Harris County*, 83 F.4th 941, 945 (5th Cir. 2023)). But to prove such a practice exists, "plaintiff[s] must do more than describe the incident[s] that gave rise to [their] injury." *Johnson v. Harris County*, 83 F.4th 941, 946 (5th Cir. 2023) (citing *Pena v. City of Rio Grande*, 879 F.3d 613, 622 (5th Cir. 2018)).

Here, the family has failed to show that an official policy or persistent practice was the moving force behind the alleged discrimination or first amendment retaliation. Although the family did allege several incidents of misconduct—the Greenville Police Department's responses to the thefts, the Fire Department's permit inspection, and the Public Works Department's spraying of the garden—all of these are incidents that gave rise to the alleged injury. The family was required to point to incidents beyond those that gave rise to the injury. Additionally, none of these incidents show that a persistent practice of discrimination or retaliation exists. To prove a widespread practice or custom claim, Plaintiffs must show that similar unconstitutional acts "have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct*." Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010) (citation omitted). That is, a pattern requires "sufficiently numerous prior incidents," not "[i]solated instances." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989). The Plaintiffs have failed to do this.

Beyond these municipal liability issues, the family's discrimination claim under the Equal Protection Clause fails for another reason. To prove a Fourteenth Amendment equal protection claim, Plaintiffs must show that similarly situated individuals were treated differently. *Tex.*

*Entertainment. Assoc., Inc. v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021); *see also Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000) ("As a prerequisite to such a claim, the plaintiff must prove that similarly situated individuals were treated differently." (citation omitted)). The Fifth Circuit has held that an equal protection claim must be dismissed when the plaintiff does "not provide even one example of an individual similarly situated to her in all relevant respects . . . ." *Villarreal v. City of Laredo*, 94 F.4th 374, 398 (5th Cir. 2024) (en banc). Here, the family has not provided one example of another individual that was treated differently than them. Therefore, their discrimination claim must be dismissed for this reason as well.

This Court sympathizes with the harm suffered by the family due to the City's indifference. Local governments have a duty to provide essential services fairly, efficiently, and without prejudice; the leaders of the City should seriously consider whether improvements in these regards might be made. In any event, considerations of common courtesy and mutual respect might go a long way in addressing the concerns identified in this 1983 action. Sadly, qualified immunity, as that doctrine is presently construed, places a heavy finger on the scales of justice in favor of Defendants.

CONCLUSION

**ACCORDINGLY**, Defendants the City of Greenville, Martavis Moore, and Carl Nichols' Motion for Summary Judgment [101] is **GRANTED.**

**SO ORDERED** this the 27th day of November, 2024.

/s/Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI

8